UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN BANK,

    Plaintiff,

v.

MICHAEL EDWARD TINDALL, et al.,

    Defendants.
_____/

TINDALL & CO.,

    Counter-Plaintiff,

v.

FRANKLIN BANK,

    Counter-Defendant.
_____/

Case No. 07-13748

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART TINDALL'S MOTION TO DISMISS, DENYING CADIEUX'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION TO STRIKE JURY DEMAND

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 7, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

On September 6, 2007, Franklin Bank ("Plaintiff") filed this lawsuit against Michael

Edward Tindall ("Tindall"), in his individual capacity and as trustee of MART Trust

("MART"), Tindall & Company, P.C. ("T&C"), Cadieux Corp., Inc. ("Cadieux"), Michigan Catholic Credit Union ("MCCU"), Michigan First Mortgage ("MFM"), and the United States of America.[1] Plaintiff's nine-count complaint, which invokes this Court's diversity jurisdiction, asserts claims relating to four separate loan transactions entered into between Plaintiff and one or more of the Tindall Defendants.[2] Presently before this Court are the following motions: (1) Tindall's motion to dismiss Counts III and VII of Franklin's complaint; (2) Cadieux's motion for summary judgment as to Count V of Franklin's complaint; and (3) Plaintiff's motion to strike the jury demand of the Tindall Defendants. The Court held a hearing on these motions on April 3, 2008.

## I. Tindall's Motion to Dismiss Counts III and VII of Plaintiff's Complaint

### A. Relevant Factual Background

#### 1. Commercial Loan Guaranty

On April 13, 2005, T&C executed and delivered a Commercial Loan Promissory Note to Plaintiff for $25,000.00. (Compl. Ex. E.) In conjunction with the Commercial Loan Promissory Note, T&C entered into a Commercial Loan Agreement with Plaintiff. (Compl. Ex. F.) Also on April 13, 2005, Tindall executed a Commercial Loan Guaranty wherein he guarantied payment of the commercial loan. (Compl. Ex. G (hereinafter referred to as "Comm. Loan Guaranty".)

Although Tindall argues that Paragraph 14 of the Commercial Loan Guaranty

---

[1] On November 13, 2007, by stipulation of the parties, the United States of America was dismissed without prejudice. (Doc. No. 39.)

[2] The "Tindall Defendants" include Tindall, MART, T&C, and Cadieux.

2

contains a mandatory arbitration clause, the arbitration clause is actually in Paragraph 21 of the Commercial Loan Guaranty, which provides in relevant part:

> You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, the transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. . . .
>
> . . .
>
> You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.
>
> The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

(Comm. Loan Guaranty ¶ 21.)

2. Business Loan Guaranty

On December 29, 2006, T&C executed and delivered to Plaintiff a Business Loan Promissory Note for $147,000.00. (Compl. Ex. O.) In a separate document, Tindall guaranteed the full and prompt payment of the business loan. (Compl. Ex. Q (hereinafter referred to as "Bus. Loan Guaranty".)

As relevant to Tindall's motion, the Business Loan Guaranty provides:

> This Guaranty shall be construed in accordance with the laws of the State of Michigan, and such laws shall govern the interpretation, construction and enforcement hereof. Guarantor irrevocably agrees and consents that any action

3

> against Guarantor may be brought in the Circuit Court of the
> County of Oakland, Michigan. Whenever possible each
> provision of this Guaranty shall be interpreted in such manner
> as to be effective and valid under applicable law, but if any
> provision of this Guaranty shall be prohibited by or invalid
> under such law, such provision shall be effective to the extent
> of such prohibition or invalidity, without invalidating the
> remainder of such provision or the remaining provisions of
> this Guaranty.

(Bus. Loan Guaranty 4.)

### B. Counts II and III of Franklin's Complaint Will Be Dismissed Based on the Arbitration Agreement in the Commercial Loan Guaranty

Tindall argues that dismissal of Count III of Plaintiff's complaint, which is entitled Breach of Commercial Guaranty, is warranted because the Commercial Loan Guaranty "requires mandatory arbitration of all claims under the guarantee and expressly waives the right to seek judicial proceedings for its enforcement." (Tindall's Mot. at 2.) Plaintiff argues that the arbitration agreement in the Commercial Loan Guaranty is permissive, rather than mandatory, because it states that the parties "may submit to binding arbitration." (Comm. Loan Guaranty ¶ 21.)

The arbitration agreement in the Commercial Loan Guaranty states that it is governed by the Federal Arbitration Act ("FAA"). (*See id.* (stating that "[t]he United States Arbitration Act will govern the interpretation and enforcement of this section"). The FAA provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. The FAA represents a "liberal policy favoring arbitration agreements," and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983). The Sixth Circuit has held that "where . . . an arbitration clause is broadly written, 'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.'" *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, ___, 2008 U.S. App. LEXIS 1775, at *7 (6th Cir. Jan. 28, 2008)(quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)).

This Court and others have held "that the word 'may' in arbitration provisions does not make arbitration optional." *Detroit Edison Co. v. Burlington N. & Santa Fe Ry. Co.*, 442 F. Supp. 2d 387, 390 (E.D. Mich. 2006)(citing cases). Instead, "use of the word 'may' in an arbitration provision gives a party the option of arbitrating or doing nothing." *Id.* (citations omitted). Stated differently, if a party to an arbitration agreement elects to arbitrate a dispute, then arbitration is mandatory. *See id.* Therefore, because Tindall has elected to arbitrate the parties' dispute regarding the Commercial Loan Guaranty, it would seem that the arbitration agreement in the Commercial Loan Guaranty makes arbitration mandatory. Plaintiff, however, argues that the Court's inquiry should not end here. According to Plaintiff, if the arbitration agreement in the Commercial Loan Guaranty was interpreted as mandatory, then Paragraphs 22 and 23 of the Commercial Guaranty would be rendered meaningless.

Paragraphs 22 and 23 of the Commercial Loan Guaranty provide:

> 22. WAIVER OF TRIAL FOR ARBITRATION. You and I

5

> understand that the parties have the right or opportunity to litigate any Dispute though trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during arbitration.
>
> 23. WAIVER OF JURY TRIAL. If the parties do not opt for arbitration, then all of the parties to this Guaranty knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Guaranty or any other documents relating to the Debt or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

(Comm. Loan Guaranty ¶¶ 22, 23.)

Although this Court acknowledges that a it must avoid an interpretation of the arbitration agreement that would render other provisions of the Commercial Loan Guaranty nugatory, *Klapp v. United Group Ins. Agency, Inc.*, 468 Mich. 459, 468, 663 N.W. 2d 457, 468 (2003), the Court believes that construing the arbitration agreement as mandatory when one party elects to arbitrate does not negate Paragraphs 22 and 23 of the Commercial Loan Guaranty. In this Court's opinion, Paragraphs 22 and 23 address "alternative remedies the parties contemplated when they drafted the" Commercial Loan Guaranty. *See ZARS, Inc. v. LTS Lohmann Therapy Sys. Corp.*, 2:05-CV-198, 2006 U.S. Dist. LEXIS 76263, at *11 (D. Utah Oct. 18, 2006). Therefore, if either Plaintiff or Tindall elect to arbitrate a dispute involving the Commercial Loan Guaranty, Paragraph 22 provides that the parties agree that they will waive their right to a trial during arbitration. *See id.* On the other hand, if neither Plaintiff nor Tindall elect to arbitrate a

dispute involving the Commercial Loan Guaranty, then Paragraph 23 provides that the parties waive their right to a jury trial. *See id.* Consequently, reading the arbitration agreement as mandatory when one of the parties to it elects to arbitrate a dispute, does not render Paragraphs 22 and 23 of the Commercial Loan Guaranty meaningless.

Plaintiff also argues that because "the arbitration clause, at most, covers only one of the nine counts in [its] Complaint, . . . Section 3 of the FAA is not satisfied. Judicial economy would be furthered by having all of the [Plaintiff's] causes of actions addressed by the same judge." (Pls.' Resp. Br. at 5.) Contrary to Plaintiff's assertion, section 3 of the FAA does not require all of the counts in a complaint to be arbitrable. *See* 9 U.S.C. § 3.[3] Moreover, to the extent Plaintiff suggests that requiring arbitration based on the arbitration agreement would delay the proceedings on any remaining counts, there is no reason why the claims in Plaintiff's Complaint that are not covered by the arbitration agreement in the Commercial Loan Guaranty cannot proceed. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007)(stating that courts have

---

[3]Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the courts in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

interpreted § 3 of the FAA to provide courts with discretion to stay the litigation nonarbitrable claims). Therefore, Plaintiff's argument is unpersuasive.

Finally, although Tindall never raises the issue, this Court believes that the arbitration agreement in the Commercial Loan Guaranty also covers Count II of Plaintiff's Complaint, which asserts a claim for Breach of the Commercial Loan Promissory Note. The arbitration agreement in the Commercial Loan Guaranty provides that the parties "may submit to binding arbitration any dispute" that "relates to this Transaction." (Comm. Loan Guaranty ¶ 21.) The arbitration agreement goes on to state that "the transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty." (*Id.*) In this Court's opinion, Plaintiff's claim involving T&C's alleged breach of the Commercial Loan Promissory Note (Count II) is also covered by the arbitration agreement in the Commercial Loan Guaranty.

B. **Count VII of Plaintiff's Complaint**

In his motion, Tindall cites Rule 12(b) of the Federal Rules of Civil Procedure, without specifying which particular defense listed in 12(b) he is asserting. Presumably, Tindall is seeking dismissal of Count VII of Plaintiff's Complaint based on 12(b)(3) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(b)(3)(allowing a party to assert the defense of "improper venue"). Tindall, however, filed his answer to Plaintiff's Complaint on December 21, 2007, which was before he filed his motion to dismiss Count VII of Plaintiff's Complaint on December 31, 2007. Therefore, Tindall waived his right to assert the defense of "improper venue." *See* FED. R. CIV. P. 12(h)(1). Therfore,

Tindall's motion to dismiss Count VII of Plaintiff's Complaint will be denied.

## II. Cadieux's Motion for Summary Judgment as to Count V of Plaintiff's Complaint

### A. Relevant Background

To refinance a personal loan that was used to purchase a boat (hereinafter "Boat"), Tindall completed a Boat Loan Credit Application that he submitted to Plaintiff on October 20, 2005. On October 24, 2005, Tindall executed and delivered to Plaintiff a Note, Disclosure, and Security Agreement (collectively "Loan Agreement") to obtain a $225,850.00 Boat Loan.

On October 24, 2005, the date of closing for the boat loan, Matthew J. McDermott, the Assistant Vice President – Executive Sales Associate for Plaintiff, states that he asked Tindall for the title for the boat. (Pl.'s Resp. Ex. B, McDermott Decl. ¶ 7.) After being informed by Tindall that the title may be lost, Mr. McDermott told Tindall that "he needed to go to the Secretary of State and apply for a lost [t]itle." (*Id.* ¶ 9.) Tindall then left the bank without Plaintiff advancing the loan. (*Id.* ¶ 10.) Apparently that same day, Tindall provided Plaintiff with an Application for Michigan Watercraft Title which listed Cadieux as the owner. (*Id.* ¶ 11.) "Tindall was told that [Plaintiff] would not advance any funds unless it received a security interest in the Boat." (*Id.* ¶ 12.) According to Mr. McDermott, "Tindall represented to [Plaintiff] that he had authority to give [Plaintiff] a security interest in the Boat on Behalf of Cadieux." (*Id.* ¶ 13.) Mr. McDermott states that Tindall then faxed Plaintiff an Application for Michigan Watercraft Title which listed "Cadieux Corp Lssr" and "Michael Edward Tindall Lsse" as the owners of the Boat and

Plaintiff as the First Secured Party. (*See* Pl.'s Resp. Ex. C.)

On June 6, 2007, Plaintiff's counsel sent a letter to Tindall informing him that he was in default of the Loan Agreement for failing to make the required monthly payments. (Pl.'s Resp. Ex. H.) Plaintiff's counsel notified Tindall that he had "ten (10) days from the date of the mailing of this letter to cure this default." (*Id.*) Sometime between June 6, 2007 and August 15, 2007, Plaintiff seized the Boat. On August 15, 2007, Plaintiff's counsel notified Tindall and Cadieux that it intended to sell the Boat "at a private sale sometime after August 28, 2007." (Pl.'s Resp. Ex. I.)

Count V of Plaintiff's Complaint seeks "a declaratory judgment that Plaintiff has a valid security interest in the entire Boat and that it lawfully took possession of the Boat, pursuant to MCL 440.9609, after default on the Boat Loan by Defendant Tindall." (Pl.'s Compl. at p. 29.) In his motion for summary judgment as to Count V, Tindall argues that he only had a leasehold interest in the Boat and Plaintiff had actual notice of Tindall's alleged leasehold interest prior to advancing the Boat Loan. Tindall contends that Plaintiff failed to create and perfect its alleged security interest in the Boat, and thus, he is entitled to summary judgment as to Count V of Plaintiff's Complaint.

### B. Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return

a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

    **C.**    **Applicable Law and Analysis**

        1.  <u>Whether Plaintiff has an Enforceable Security Interest in the Boat</u>

Michigan's version of Article 9 of the Uniform Commercial Code ("UCC") governs secured transactions. *See, e.g.,* MICH. COMP. LAWS §§ 440.9101-9994. A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." *Id.* § 440.9201(37). For a security interest to be enforceable and thus attach to the collateral, i.e., the personal "property subject to the

security interest," *id.* § 440.9102, three requirements must be satisfied: (1) the secured party must have given value; (2) the debtor must have "rights in the collateral or the power to transfer rights in the collateral to the secured party;" and (3) as relevant to Plaintiff's alleged security interest, the debtor must have "authenticated a security agreement that provides a description of the collateral." *Id.* § 440.9203(2).

There is no real dispute regarding requirements (1) and (3) listed above. Rather, Tindall contends that Plaintiff had actual notice that he held a leasehold interest in the Boat and thus, no security interest in the Boat was ever created. In other words, Tindall seemingly contends that because he was merely a lessee of the Boat he did not have sufficient "rights in the [Boat] or the power to transfer rights in the [Boat] to" Plaintiff. *Id.*

Michigan's version of Article 9 of the UCC does not define "rights in the collateral." Nor does it specify the type of "rights in the collateral" that are necessary for a security interest to be enforceable. Comment 6 to section 444.9203 of the Michigan Compiled Laws provides: "A debtor's limited rights in collateral, short of full ownership, are sufficient for a security interest to attach." *Id.* § 440.9203 cmt. 6. Furthermore, in cases where the debtor has rights short of full ownership, the "security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." *Id.* Therefore, one who has a leasehold interest in collateral has sufficient rights in the collateral to transfer leasehold rights to a secured party. Nevertheless, the secured interest in such circumstances is limited to that which the debtor could convey, a leasehold interest, and the secured party's interest would be subject to ownership interest of the

lessor. *See id.* § 440.2907(1)(stating that "a creditor of a lessee takes subject to the lease contract").

In the case at bar, if Tindall merely had a leasehold interest in the Boat, Plaintiff's secured interest would be subject to Cadieux's ownership interest in the Boat. However, Plaintiff argues that Cadieux must be estopped from asserting that Tindall did not have sufficient rights in the collateral to grant Plaintiff a security interest in the Boat because Cadieux allowed Tindall to appear as if he was the actual owner of the Boat. This Court finds Plaintiff's argument persuasive.

Although there are no Michigan cases directly on point, "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest." *Merchants Bank v. Atchison*, 8321 F.2d 1236, 1239 (11th Cir. 1987)(citing cases). In his declaration, Mr. McDermott states that Tindall told Plaintiff that he had the authority to give Plaintiff a security interest in the Boat on behalf of Cadieux. (McDermott Decl. ¶ 13.) A reasonable person could infer from this evidence that, if there was a lease between Cadieux and Tindall, Cadieux could have given Tindall permission to use the Boat as collateral. Based on this evidence, there is a genuine issue of material fact as to whether Cadieux should be estopped from asserting that Tindall did not have permission to grant a security interest in the Boat.

Cadieux further avers that Plaintiff had actual notice of Cadieux's ownership prior to advancing the boat loan to Tindall, and thus, Plaintiff cannot rely on estoppel. *See Larson v. Van Horn*, 110 Mich. App. 369, 380, 313 N.W. 2d 288, 293 (1981)(holding that

13

a bank could not assert the defense of estoppel when the bank's agent had actual knowledge of a fact and thus could not claim that it was induced to believe the fact).

Cadieux's argument regarding actual notice is unpersuasive. Cadieux has failed to provide any evidence, in the form of an affidavit or otherwise, of the existence of the lease. Rather, Cadieux merely relies on the fact that the Application for Michigan Watercraft Title lists it as "Lssr" and Tindall as "Lsse." Moreover, the actual notice Cadieux contends Plaintiff received consists of a fax of an Application for Watercraft Title allegedly sent on October 3, 2005. (*See* Cadieux's Mot. Ex. 4.) However, Michael S. Polcyn, Plaintiff's Vice President – Commercial Loan Officer, to whom the fax was allegedly sent, denies ever receiving the fax and also denies ever being told that Tindall merely had a leasehold interest in the Boat.[4] (Pl.'s Resp. Ex. J, Michael S. Polcyn Affidavit ¶¶ 1, 3, 7.) Based on this evidence, this Court cannot conclude as a matter of law that Plaintiff had actual notice of the lease prior to advancing the boat loan.

### 2. Whether Plaintiff Perfected its Security Interest in the Boat

Cadieux also argues that Plaintiff did not perfect its security interest in the Boat. The Court believes that the issue of perfection is irrelevant as to Count V of Plaintiff's Complaint. Perfection becomes relevant when determining the priority of a secured party's interest in the collateral with respect to the competing interests of third-party creditors. *See* MICH. COMP. LAWS § 440.9322 ("Conflicting perfected security interest . . . rank according to priority in time of filing or perfection.") Because there are no third-

---

[4]Mr. McDermott also denies being told that Tindall was only giving Plaintiff "a security interest in the Boat as a lessee." (McDermott Aff. ¶ 15.)

14

party creditors asserting that they have a interest in the Boat that takes priority over Plaintiff's alleged secured interest, perfection is not an issue as to Count V of Plaintiff's Complaint.

### III. Motion to Strike Tindall Defendants' Jury Demand

In its motion, Plaintiff moves to strike the jury demand of the Tindall Defendants with respect to Counts I, II, III, VI, VII, and VIII of the Complaint and T&C's Verified Counter-Complaint.[5] Plaintiff argues that the Tindall Defendants contractually waived their rights to a jury trial in any dispute arising out of the Business Loan. Furthermore, as to Count I of its Complaint, Plaintiff contends that there is no right to a jury trial in foreclosure actions. For these reasons, Plaintiff asserts that the Tindall Defendants' jury demand must be stricken.

#### A. Counts VI, VII, and VIII

Plaintiff's motion as it applies to Counts VI, VII, and VIII relies on contractual provisions in the documents related to the Business Loan advanced to T&C and guaranteed by Tindall. More specifically, Plaintiff relies on contractual provisions in the Business Loan Promissory Note (Pl.'s Compl. Ex. O at 2), the Business Loan Agreement (Pl.'s Compl. Ex. P § 10.9), the Business Loan Guaranty (Pl.'s Compl. Ex Q at 4), and the Business Loan Security Agreement (Pl.'s Compl. Ex. R ¶ 17) that expressly waive the right to a jury trial for litigation arising out these documents.

---

[5]Because this Court has already held that the parties must arbitrate Counts II and III of Plaintiff's Complaint based on the arbitration agreement in the Commercial Loan Guaranty, the Court will disregard Plaintiff's arguments as to these counts.

The Seventh Amendment guarantees the right of a jury trial in civil cases. U.S. CONST. amend. VII. "Although this case is before the Court on diversity jurisdiction, the question of one's right to a jury trial, even where that right has been addressed through a contractual provision, is governed by federal law, not state law." *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc.*, 528 F. Supp. 2d 710, 712 (E.D. Mich. 2007). It is well-settled in the Sixth Circuit that "parties to a contract may by prior written agreement waive the right to a jury trial." *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985). For such a waiver to be effective, it must be done knowingly, voluntarily, and intentionally. *Id.*

In response to Plaintiff's motion as it applies to Counts VI, VII, and VIII of its Complaint, the Tindall Defendants do not make any meaningful argument as to why the applicable contractual provisions in the loan documents related to the Business Loan did not effectively waive their right to a jury trial. Therefore, Plaintiff's motion to strike the jury demand will be granted as to Counts VI, VII, and VIII of its Complaint.

**B.  Count I**

In Count I of its Complaint, Plaintiff seeks to foreclose on a mortgage it held on a property located at 55 Merriweather Road, Grosse Pointe Farms, MI 48236. Count I of Plaintiff's Complaint is asserted against MART. In its answer to Plaintiff's Complaint, MART demanded a jury trial. Plaintiff argues that MART's jury demand must be stricken because foreclosure actions are equitable in nature.

The Tindall Defendants contend that even though part of the relief in a foreclosure proceeding is equitable in nature, there are also legal issues that must be tried by a jury.

In so arguing, the Tindall Defendants assert that the likelihood of a deficiency judgment as well as "default, breach of contract, fiduciary/agency duty, and allegations of 'fraud'" are all legal issues that must be resolved by a jury. (Tindall Dfts.' Resp. Br. at 2.)

The Seventh Amendment right to a jury trial does not apply when a claim will resolve only equitable, as opposed to legal, rights. *See Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996). To determine whether a cause of action will resolve only equitable rights, a court must first compare the "issue to the '18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.'" *Id.* (quoting *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct 1339, 1345 (1990)). Second, a court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Terry*, 494 U.S. at 565, 110 S. Ct. 1345.

Historically, mortgage foreclosure actions have been considered equitable proceedings. *Fed. Deposit Ins. Corp. v. Sextant Dev. Corp.*, 142 F.R.D. 55, 57 (D. Conn. 1992)(citing cases). "In federal court, foreclosure actions have been traditionally tried before the court, and not before a jury." *Id.* Moreover, the remedy sought by Plaintiff "in Count I is the remedy of foreclosure followed by a deficiency judgment." (Pl.'s Rep. Br. at 3.) Under Michigan law, a mortgage foreclosure proceeding is equitable in nature. MICH. COMP. LAWS § 600.3180. Contrary to the Tindall Defendants' assertion, the right to a deficiency judgment "is an essential element of a foreclosure proceeding." *Sextant Dev. Corp.*, 142 F.R.D. at 57; *see also* MICH. COMP. LAWS § 600.3150. Finally, the Tindall Defendants' purported legal defenses to Plaintiff's mortgage foreclosure proceeding do not give rise to a right to a jury trial. *See CPI Plastics, Inc. v. USX Corp.*,

17

22 F. Supp. 2d 1373, 1377 (N.D. Ga. 1998)(stating that "even defenses that are 'legal' in nature cannot give rise to a right to jury trial if not appended to a claim or other request for affirmative relief"); *Burlington N. R.R. Co. v. Neb. Pub. Power Dist.*, 931 F. Supp. 1470, 1481 (D. Neb. 1996)(same); *Sextant Dev. Corp.*, 142 F.R.D. at 58 ("A defendant cannot transform a foreclosure proceeding into an action at law by simply asserting legal defenses and counterclaims.") Therefore, Plaintiff's motion to strike the jury demand as to Count I will be granted.

Accordingly,

**IT IS ORDERED** that Tindall's motion to dismiss is **GRANTED** to the extent that it seeks to compel arbitration on Count III of Plaintiff's Complaint based on the arbitration agreement in the Commercial Loan Guaranty. The Court further finds that dismissal of Count II of Plaintiff's Complaint is proper as Count II is also covered by the arbitration agreement in the Commercial Loan Guaranty. Therefore, Counts II and III of Plaintiff's Complaint are **DISMISSED**.

**IT IS FURTHER ORDERED** that Tindall's motion to dismiss Count VII of Plaintiff's Complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Cadieux's motion for summary judgment as to Count V of Plaintiff's Complaint is **DENIED**.

**IT IS FURTHER ORDERED** that the jury demand of the Tindall Defendants as to

Counts I, VI, VII, and VIII of Plaintiff's Complaint is **STRICKEN**.

                                                        s/PATRICK J. DUGGAN
                                                        UNITED STATES DISTRICT JUDGE

Copies to:
Sheri B. Cataldo, Esq.
Mark A. Chaban, Esq.
Chiara F. Mattieson, Esq.
Patricia Corkery, Esq.
Matthew B. Woodworth, Esq.
Michelle M. Wezner, Esq.