UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN BANK,

     Plaintiff,

v.

MICHAEL EDWARD TINDALL, et al.,

     Defendants.

_____/

TINDALL & CO., P.C.,

     Counter-Plaintiff,

v.

FRANKLIN BANK,

     Counter-Defendant.

_____/

Case No. 07-13748

Honorable Patrick J. Duggan

## <u>OPINION</u>

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 27, 2008.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Franklin Bank ("Plaintiff") filed this lawsuit against Michael Edward Tindall

("Tindall"), in his individual capacity and as trustee of MART Trust ("MART"), Tindall &

Company, P.C. ("T&C"), Cadieux Corp., Inc. ("Cadieux"), Michigan Catholic Credit Union

("MCCU"), Michigan First Mortgage ("MFM"), and the United States of America.[1] Plaintiff's complaint, which invokes this Court's diversity jurisdiction, asserts nine separate counts relating to four separate loans Plaintiff extended to Tindall or T&C. These loans include a Home Loan extended to Tindall, a Commercial Loan extended to T&C, a Boat Loan extended to Tindall, and a Business Loan extended to T&C.

In Count I of its complaint, entitled Foreclosure of Mortgage, Plaintiff seeks the following relief: (1) a judgment against Tindall as Trustee of MART Trust in the amount of $342,145.11, plus interest, costs and attorneys' fees[2]; (2) an order of foreclosure [on the mortgage that secured repayment of the Home Loan] and a sale of the property to satisfy the debt; and (3) a deficiency judgment if "a sufficient amount" is not realized from the sale.[3]

In Counts II and III, Plaintiff asserts claims against T&C and Tindall for breach of the Commercial Loan promissory note and the Commercial Loan guaranty.[4] Count IV of Plaintiff's complaint alleges a fraudulent misrepresentation claim against Tindall related to the Boat Loan. In Count V, which involves Tindall and Cadieux, Plaintiff seeks a declaratory judgment that it has a valid security interest in the Boat and that its seizure of the

---

[1] On November 13, 2007, by stipulation of the parties, the United States of America was dismissed without prejudice. (Doc. No. 39.)

[2] In Plaintiff's renewed motion for partial summary judgment filed May 15, 2008, Plaintiff seeks $361,527.50 plus interest from May 5, 2008.

[3] Plaintiff also seeks a determination that MFM's and MCCU's mortgages on the subject property are subordinate to Plaintiff's interest, which is the subject of separate motions currently pending before the Court that are not addressed in this Opinion and Order. *See infra* footnote 6.

[4] Counts II and III of Plaintiff's complaint were dismissed on April 7, 2008, pursuant to a binding arbitration agreement.

Boat was in compliance with Michigan law. Counts VI and VII of Plaintiff's complaint assert claims against T&C and Tindall for breach of the Business Loan promissory note and the Business Loan guaranty. In Count VIII, Plaintiff alleges that T&C made a fraudulent misrepresentation to obtain the Business Loan. Finally, Count IX of Plaintiff's complaint alleges that Tindall made fraudulent misrepresentations on credit applications he submitted to obtain the Home and Boat Loans.

T&C has filed a counter-complaint against Plaintiff asserting seven separate counts that are all related to the Business Loan and Commercial Loan. In Count I of its counter-complaint, T&C alleges a breach of contract claim against Plaintiff on the Business Loan. Counts II and III of T&C's counter-complaint allege breach of agency and breach of fiduciary duty claims against Plaintiff. In Counts IV of T&C's counter-complaint, it seeks an accounting from Plaintiff. Count V of T&C's counter-complaint seeks a declaratory judgment that Plaintiff caused T&C's defaults under the Business Loan and Commercial Loan. Count V also seeks to enjoin Plaintiff from taking adverse action against the Tindall Defendants[5] for allegedly causing these defaults. In Count VI of its counter-complaint, T&C alleges that Plaintiff breached its statutory duty of good faith under sections 440.1203 and 440.4103 of the Michigan Compiled Laws. Finally, in the last count of its counter-complaint, misnumbered Count IX[6], T&C alleges that Plaintiff violated the anti-tying

---

[5] For ease of reference, the Court refers to Tindall, MART, Cadieux, and T&C collectively as the "Tindall Defendants."

[6] The Counts of T&C's counter-complaint are misnumbered as there is no Count VII and VIII.

provisions set forth in 12 U.S.C. § 1464(q).

Presently before this Court are Plaintiff's motions for summary judgment on all of the remaining counts of its complaint and all of the counts of T&C's counter-complaint. Also before the Court are one or more of the Tindall Defendants' motions for summary judgment on all of the remaining counts in Plaintiff's complaint and Counts I-V of T&C's counter-complaint.[7] The Court held a hearing with respect to these motions on September 24, 2008.[8]

## I. Relevant Factual Background

The claims relating to one of the loans at issue in this case, the Commercial Loan, were dismissed on April 7, 2008, pursuant to a binding arbitration agreement between the parties. Therefore, the instant motions deal with only three of four loans Plaintiff extended to Tindall and T&C, Tindall's law firm. Furthermore, while the factual record in this case is dense, the Court believes that the resolution of the motions currently before it does not require a recitation of all of the facts in the record. Consequently, the Court will provide a brief description of the three loans in this section and, if necessary, will expand on this brief description when analyzing the parties' claims.

### A. Home Loan

---

[7] More specifically, Tindall and MART have moved for summary judgment on Count I of Plaintiff's complaint. Tindall also has moved for summary judgment on Counts IV, VII, and IX of Plaintiff's complaint. Cadieux has filed a renewed motion for summary judgment on Count V of Plaintiff's complaint. Furthermore, T&C has filed a motion for summary judgment on Counts VI and VIII of Plaintiff's complaint and Counts I-V of its counter-complaint.

[8] This Opinion and Order does not address the motion for partial summary judgment filed by Plaintiff against MFM or the motion for partial summary judgment filed by MCCU against Plaintiff.

On March 7, 2005, Tindall entered into a "Home Equity Line Agreement" with Plaintiff for $325,000 (hereinafter referred to as the "Home Loan"). On the same date, to secure repayment of the Home Loan, Tindall, acting as trustee of MART, gave Plaintiff a mortgage on property located at 55 Merriweather Road, Grosse Pointe Farms, Michigan 48236 (hereinafter referred to as the "Property"). Plaintiff's mortgage was recorded in the Wayne County Register of Deeds on March 29, 2005.

## B. Boat Loan

On April 4, 2005, Cadieux or Tindall as President of Cadieux, paid $365,150.00 for a 2004 Sea Ray ("Boat") with cash that "came from [Tindall's] law practice." (Doc. 157-4.) The bill of sale for the Boat appears to be signed by Tindall in his capacity as President for Cadieux.[9] (Doc. 157-3.) To finance this purchase, Tindall applied for a Boat Loan from Plaintiff in October 2005.

The closing for the Boat Loan occurred on October 24, 2005. Sometime during closing, "Tindall was told that [Plaintiff] would not advance any funds unless it received a security interest in the Boat." (Doc. No. 78-4, McDermott Decl. ¶ 12.) Tindall then "represented to [Plaintiff] that he had authority to give [Plaintiff] a security interest in the Boat on Behalf of Cadieux." (*Id.* ¶ 13.) Tindall denies making any "representations whatsoever to anyone . . . regarding ownership of the [B]oat, Cadieux, or [his] lease of the [B]oat." (5/8/08 Tindall Aff. ¶ 10.) Sometime before or after the closing on the Boat Loan, "Tindall faxed [Plaintiff]

---

[9] In his affidavit, dated May 8, 2008, Tindall states that he is "not a shareholder or owner of Cadieux Corporation, Inc ('Cadieux')." (Doc. 107-3 ¶ 9.) He does not, however, deny that he signed the bill of sale for the Boat as President of Cadieux or that he purchased the Boat with cash from his law practice.

an Application for Michigan Watercraft Title listing [Plaintiff] as the First Secured Party."

(*Id.* ¶ 14.)  This Application for Michigan Watercraft Title identified the owner of the Boat

as Cadieux "Lssr." and Tindall "Lsse."[10]  In addition, this application appears to have been

signed by Tindall, with the word "Lessee" after his signature, in the space designated for the

owner's signature.

### C. Business Loan

The final loan at issue in these motions is a $147,000.00 Business Loan Plaintiff

extended to T&C.  T&C obtained the Business Loan from Plaintiff because Tindall and T&C

were delinquent on the three other loans that are/were also at issue in this case.  In October

2006, "Tindall (or T&C) had been delinquent in making the monthly payments on all three

of these loans."  (Doc. No. 158-3 ¶ 8.)  Plaintiff was reluctant to loan Tindall or T&C

additional money in light of these delinquencies.  Nevertheless, Tindall caused a letter from

Gregory J. Saffady, a "Receiver [in] U.S. District Court Ed MI Case #04-cv-75061," dated

December 15, 2006, to be sent to Plaintiff.  (*Id.* 9.)  In this letter, Mr. Saffady stated that

T&C was owed a total of $195,770.45 in fees and costs for its work as "Receiver's counsel"

in the case in which Saffady was serving as Receiver.  (*Id.*)  Mr. Saffady further stated that

the fees and costs "can be paid 30 days after entry of an appropriate order of the U.S. District

Court."  (*Id.*)

After receiving the letter from Mr. Saffady and meeting with Tindall personally,

Plaintiff loaned Tindall $147,000.00 for a term of six months on December 29, 2006, and

---

[10] This Application for Michigan Watercraft Title also listed the address of Tindall's law firm, T&C, as the address of the owner.

obtained a security interest in, among other things, the amount of fees and costs due to T&C for its work as "Receiver's counsel." The Business Loan states that Tindall agreed to use the proceeds of the loan to (i) bring three existing loans made by Plaintiff to Tindall and T&C up to date, (ii) fund a holdback account for six monthly payments due on the three existing loans Tindall and T&C had with Plaintiff, and (iii) fund a holdback account for the six monthly payments on the Business Loan. The remainder of the proceeds from the Business Loan would be distributed to T&C. The payments from the holdback accounts established under the Business Loan were to be made automatically pursuant to an automatic transfer authorization executed by Tindall at the closing of the Business Loan on December 29, 2006. Tindall also personally guaranteed the payment of the amounts due under the Business Loan.

To secure repayment of the Business Loan, T&C and Plaintiff entered into a security agreement, whereby T&C granted Plaintiff a security interest in all of T&C's assets, including, but not limited to, the amounts due to T&C as "Receiver's counsel." (Doc. 158-9 at 1-2.) As additional security, Plaintiff obtained a collateral assignment

of the assets in the holdback accounts established with the proceeds of the Business Loan. (Doc. 158-10.)

### D. Defaults on the Home Loan, Boat Loan, and Business Loan

It is undisputed that Tindall and T&C have failed to pay amounts due under the Home, Boat, and Business Loans. On July 3, 2007, Plaintiff sent Tindall and T&C a letter, along with attached ledgers, showing the amounts due on the Home and Business Loans and demanding the outstanding amounts due. (Doc. 158-13.) Furthermore, on June 6, 2007, Plaintiff informed Tindall that he had failed to pay the amounts due under the Boat Loan. (Doc. 157-9.) Sometime between June 6, 2007 and August 15, 2007, Plaintiff took possession of the Boat based on Tindall's failure to pay the amounts due under the Boat Loan.

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party

to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III.   Applicable Law and Analysis

The Court will deal with the Plaintiff's and the Tindall Defendants' motions for summary judgment in the following order. First, the Court will address Plaintiff's and the Tindall Defendants' motions for summary judgment relating to the Home Loan. Second, the Court will address the parties' motions for summary judgment relating to the Boat Loan. Third, the Court will address the parties' motions relating to the Business Loan. Fourth, the Court will address the parties' motions relating to Counts VIII and IX of Plaintiff's complaint, which allege fraudulent misrepresentation claims against T&C and Tindall, respectively. Finally, the Court will address Plaintiff's motion for summary judgment on Counts VI and IX of T&C's counter-complaint.

**A.    Plaintiff's and the Tindall Defendants' Motions for Summary Judgment Relating to the Home Loan**

Four of the above-referenced motions for summary judgment involve the Home Loan, which is at issue in Count I of Plaintiff's complaint.  As set forth previously, in Count I of its complaint, Plaintiff seeks an entry of a judgment of foreclosure on the Property and a money judgment entitling it to a deficiency in the event that the debt owing to Plaintiff on the Home Loan is not satisfied by foreclosure of the mortgage.

1.    <u>Plaintiff Has a Valid Mortgage On the Property</u>

Tindall purchased the Property from Letscher on August 1, 2003.  A warranty deed reflecting this transfer was recorded on September 25, 2003.  Also on August 1, 2003, Tindall transferred the property to MART by quitclaim deed.  The August 1, 2003 quitclaim deed transferring the property from Tindall to MART was recorded on September 4, 2003. The chain of title also reflects the existence of two quitclaim deeds, both dated October 22, 2004, by which MART transferred title to Tindall and Tindall transferred title to MART. The October 22, 2004 quitclaim deed transferring title from Tindall to MART was recorded on November 22, 2004, and the October 22, 2004 quitclaim deed transferring title from MART to Tindall was recorded on December 15, 2004.

Tindall (or MART) contends that, when MART gave a mortgage to Plaintiff on March 7, 2005 (the mortgage that is the subject of Count I), title was in Tindall not MART, and therefore, MART could not give a valid and enforceable mortgage on the Property to Plaintiff on that date.  Tindall's argument rests on two suppositions.  First, Tindall's argument is based on the fact that the August 1, 2003 quitclaim deed transferring title from Tindall to

MART was recorded before the August 1, 2003 deed transferring title from Letscher to Tindall. Second, Tindall's argument is based on the fact that the October 22, 2004 quitclaim deed transferring title from Tindall to MART was recorded on November 22, 2004, before the October 22, 2004 quitclaim deed transferring title from MART to Tindall, which was recorded on December 15, 2004. Tindall (or MART) thus argues that, because the August 1, 2003 quitclaim deed from Tindall to MART was recorded after the warranty deed from Letscher to Tindall, MART did not have title to the property after August 1, 2003. Therefore, Tindall (or MART) argues, the October 22, 2004 quitclaim deeds must take effect in the order in which they were recorded, leaving Tindall with title to the property on March 7, 2005, the date MART gave a mortgage to Plaintiff.

Tindall's (or MART's) reasoning is flawed. A transfer of an interest in property takes effect when the deed is delivered from the grantor to the grantee. *Ligon v. City of Detroit*, 276 Mich. App. 120, 128, 739 N.W. 2d 900, 905 (2007). Because the record in this case does not indicate otherwise, the Court assumes that each deed was delivered by the grantor to the grantee on or about the date of deed.

This Court concludes that title to the subject property on March 7, 2005, the date the mortgage was given to Plaintiff, vested in MART. The Court reaches this conclusion because, prior to the execution and delivery of the October 22, 2004 quitclaim deeds, title was in MART by virtue of the August 1, 2003 deed transferring Tindall's interest to MART. Therefore, in order for Tindall to be able to transfer his interest to MART on October 22, 2004, Tindall had to first acquire title from MART. Accordingly, in this Court's opinion, the only logical sequence of the October 22, 2004 quitclaim deeds was for MART to transfer its

title to Tindall and then for Tindall to transfer his interest to MART. *See Biddle Ave. Realty Corp. v. Comm'r of Internal Revenue*, 94 F.2d 435, 436 (6th Cir. 1938)(stating that "when two or more deeds, conveyances, or contracts of any sort are made simultaneously, and so connected with each other that they may be regarded as one transaction, these contracts and conveyances should be held to take effect in such order of priority and succession as shall best carry into effect the intention and best secure the rights of all respective parties") The Tindall Defendants' counsel conceded this point at the hearing. Accordingly, the Court finds that the mortgage given by MART to Plaintiff on March 7, 2005 is valid and enforceable.

2. Tindall and/or MART are in Default under the Home Loan and Mortgage and their defenses are unavailing

Although Tindall and MART do not argue that they are not in default under the terms of the Home Loan and Plaintiff's mortgage, they assert a number of defenses they claim preclude Plaintiff from foreclosing on the Property.

MART and Tindall first contend that the Business Loan modified the Home Loan and, by establishing holdback accounts from which Plaintiff was to automatically withdraw payments due on the four loans that are involved in this litigation, Plaintiff became Tindall's and/or MART's agent and fiduciary. This Court disagrees.

Even assuming that the Business Loan modified the Home Loan, the only effect that such an alleged modification would have had on Tindall's obligations under the Home Loan would have been on Tindall's obligation to pay the six monthly payments due on the Home Loan after December 29, 2006. The Business Loan created holdback accounts from the Business Loan proceeds that could be automatically transferred by Plaintiff to satisfy the

Tindall Defendant's obligations as to all four loans at issue in this litigation. Tindall's and MART's alleged default under the Home Loan and Mortgage occurred due to Tindall's non-payment for the amounts due under the Home Loan after March 2007, the month that Tindall terminated Plaintiff's right to automatically transfer money for the payment of, among other loans, the Home Loan. Therefore, even if the Business Loan modified the Home Loan, the modification did not result in Tindall's and MART's default.

The Court also finds Tindall's and MART's related argument that Plaintiff caused the default and thus has unclean hands unpersuasive. "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *McFerren v. B&B Inv. Group*, 253 Mich. App. 517, 523, 655 N.W.2d 779, 783 (2002)(internal quotations and citations omitted). This Court does not believe that there is any evidence in the record creating a genuine issue of material fact as to whether Plaintiff acted in bad faith in declaring Tindall and MART to be in default under the terms of the Home Loan and Mortgage. Therefore, contrary to Tindall's and MART's assertion, Plaintiff does not have unclean hands and can proceed with this foreclosure action.

Finally, Tindall and MART contend that because they sent Plaintiff several requests for an accounting, which they contend satisfied the requirements of the Fair Credit Billing Act ("FCBA"), 16 U.S.C. §§ 1666-1666j, and because Plaintiff's various responses to Tindall's and MART's requests did not satisfy the FCBA, Plaintiff is precluded from foreclosing on its Mortgage. Plaintiff contends that Tindall's and MART's requests for an accounting failed to comply with the FCBA's requirements, and in any event, the FCBA does not prohibit it

from seeking to collect the undisputed portion of the Home Loan and foreclosing on the Property.

"The FCBA imposes certain obligations on creditors who extend 'consumer credit,' which means the 'transaction is one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily used for personal, family, household, or agricultural purposes.'" *Langenfeld v. Chase Bank USA, N.A.*, 537 F. Supp. 2d 1181, 1192 (N.D. Okla. 2008)(quoting 15 U.S.C. § 1602(h) and citing *Am. Express Co. v. Koerner*, 452 U.S. 233, 240-46, 101 S. Ct. 2281, 2285-88 (1981)). The FCBA provides consumers with a dispute resolution process for the "'correction of billing errors' on consumer credit statements." *Id.* (citing 15 U.S.C. § 1666(a); 12 C.F.R. § 226.1). The FCBA's procedural requirements are triggered when a consumer sends a written notice to the creditor setting forth (1) the "name and account number" of the consumer credit account, (2) the consumer's "belief that the [credit] statement contains a billing error[11] and the amount of such billing error," and (3) "the reasons for the [consumer's] belief (to the extent applicable) that the [credit] statement contains a billing error." 15 U.S.C. § 1666(a). Upon receipt of such a written notice, the creditor has 30 days to send a written acknowledgment of the consumer's written notice. *Id.* § 1666(a)(3)(A). In addition, within two complete billing cycles or 90 days "after receipt of the written notice and prior to taking any action to collect the account," the creditor must either (1) correct the "billing error" and inform the consumer of its correction, or (2) after conducting a

---

[11]A "billing error" is defined in 15 U.S.C. § 1666(b).

reasonable investigation, send a written explanation stating that the creditor has determined that no "billing error" has occurred. *See* 15 U.S.C. § 1666(a)(3)(B); 12 C.F.R. § 226.13(c)(2), (e), (f).

Most importantly for the purposes of Tindall's and MART's assertions, once a consumer avails itself of the dispute resolution procedure set forth in the FCBA, a creditor is prohibited from taking certain actions against the consumer. As relevant to this case, "the creditor is precluded from taking "any action to collect the [disputed] amount, or any part thereof,' 15 U.S.C. § 1666(a); *see also* 12 C.F.R. § 226.13(d)(1), and the 'consumer need not pay' this amount, 12 C.F.R. § 226.13(d)(1)." *Burnstein v. Saks Fifth Ave. Co.*, 208 F. Supp. 2d 765, 773 (E.D. Mich. 2002).

Tindall asserts that he made four separate requests for an "accounting" that he argues constitute written notice of a "billing error" under the FCBA. According to Tindall, these alleged written notices include letters dated March 7, 2007, April 3, 2007, April 24, 2007, and April 27, 2007, in which Tindall and Mr. Chaban, the Tindall Defendants' counsel, request that Plaintiff provide Tindall with an "accounting," a "detailed accounting," a "corrected accounting," and a "satisfactory accounting." In response to Tindall's assertion that these letters constitute sufficient written notice under the FCBA, Plaintiff argues that these alleged written notices of "billing errors" fail to satisfy the FCBA's requirements.

The Court finds that Tindall's letters failed to comply with the FCBA, and thus, the FCBA's procedural requirements were never triggered. Here, the only letter sent by Tindall that may constitute a written notice of a "billing error" under the FCBA is the letter he sent

to Plaintiff dated March 7, 2007.[12] In this letter, Tindall stated that "[t]he initial payment due from loan proceeds on the [Home Loan] was not made in the correct amount, leaving a delinquent balance and additional late charges on the January statement" and that "[p]ayments on the [Home Loan] in January and February were late, as reflected by the 2/13/07 statement, resulting in late charges." (Doc. 106-9 at 3.) Nevertheless, the Court finds that the FCBA does not apply to Tindall's March 7, 2007 letter because there was no "billing error" to dispute at the time Tindall sent this letter.

Contrary to the statements made in the letter, the only late charge that was assessed by Plaintiff was a late charge associated with the January 2007 payment on the Home Loan. There was no late charge assessed for February 2007, because the payment due for that month was paid on time. (*See* Doc. No. 106-19 at 8.) Moreover, the late charge Plaintiff assessed for the January 2007 payment was waived the same day that it was transferred by Plaintiff from the Business Loan holdback account to the Home Loan account, which was reflected in the February 16, 2007 Home Loan Billing Statement, the same statement Tindall appeared to be challenging in his March 7, 2007 letter. (*See id.*) Therefore, to the extent Tindall's March 7, 2007 letter was intended to be a written notice challenging Plaintiff's alleged "billing error" in assessing a late fee for the payment due in January 2007, the

---

[12]The remaining letters that Tindall asserts constitute written notices of "billing errors" to support his FCBA defense (i.e. letters dated April 3, 24, and 27, 2007), the Court finds that they fall far short of "written notice" requirements in the FCBA. *See* 15 U.S.C. § 1666(a)(1)-(3). These letters are completely devoid of any reference related to a specific belief Tindall may have had regarding an alleged billing error and the reasons for such a belief. Indeed, these letters seem to be relying on Tindall's March 7, 2007 letter as providing the reasons why Tindall and T&C were seeking an accounting.

statement Tindall was challenging (the February 16, 2007 Home Loan Statement) already indicated that the late fee had been waived. Because there was no "billing error" to challenge with respect to the late charge assessed on the January 2007 payment, the Court finds that Tindall's March 7, 2007 letter did not trigger any of the procedural requirements under the FCBA.

Even if Plaintiff somehow violated the FCBA by failing to send Tindall a "written explanation or clarification" for the January 2007 late fee that it waived before Tindall sent the alleged written notice of a "billing error," the Court finds no merit to Tindall's and MART's attempt to place the entire balance due under the Home Loan in dispute as a result of Plaintiff's improper assessment of one late charge. Any argument Tindall and MART may make in this regard must be rejected because the FCBA and its implementing regulations "separately address the creditor's rights and obligations for disputed and undisputed amounts." *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 829 (S.D. Tex. 2007)(citing 15 U.S.C. § 1666(c) and 12 C.F.R. pt. 226 supp. I, official staff commentary § 226.13 P 13(d)(2)), *aff-d*, No. 07-20339, 276 Fed. Appx. 393 (5th Cir. 2008)(unpublished). In other words, to the extent that the FCBA's procedural requirements are triggered, the FCBA precludes a creditor from seeking to collect only the amount of the credit statement that is in dispute. To interpret the FCBA otherwise would allow a consumer alleging that the creditor made a specific computational mistake on a particular credit statement, to turn such a mistake into "a global mistake" that will "result in a never-ending 'computation' error." *Langenfeld*, 537 F. Supp. 2d at 1201. Accordingly, Tindall's and MART's attempt to place the entire amount due under the Home Loan into dispute based on

Plaintiff's assessment of a single late charge is rejected.

### 3. Conclusion With Regard to Count I as to Plaintiff and the Tindall Defendants

For the reasons stated above, the Court finds that there is no genuine issue of material fact that Plaintiff has a valid mortgage on the Property and that Tindall, in his individual capacity or in his capacity as trustee of MART, defaulted under the terms of the Home Loan and Plaintiff's mortgage based on his failure to pay the amount due under the Home Loan.[13] Therefore, because Plaintiff's mortgage unambiguously allows Plaintiff to accelerate the amount due under the Home Loan and foreclose on the Property, the Court will grant summary judgment in Plaintiff's favor on Count I of its complaint.[14] Tindall's and MART's motions for summary judgment that are related to Count I of Plaintiff's complaint will be denied.

**B.   Plaintiff's and the Tindall Defendants' Motions for Summary Judgment Relating to the Boat Loan**

Tindall has moved for summary judgment on Count IV of Plaintiff's complaint.  In

---

[13] Because this Court finds that Tindall and MART are in default under the terms of Plaintiff's mortgage based on their failure to pay the amount due under the Home Loan, the Court does not address Plaintiff's argument that Tindall and MART are in default under the terms of the Home Loan and mortgage based on their alleged failure to disclose Tindall's previous bankruptcy.  Moreover, Tindall's alleged failure to disclose his previous bankruptcy is the subject of Count IX of Plaintiff's complaint and any arguments regarding Count IX of the complaint will be addressed with the pending motions that are related to that count.

[14] In Plaintiff's complaint and its motion for summary judgment, Plaintiff seeks a judgment for the amount of the indebtedness.  Because the Court is uncertain at this time as to the exact amount of the indebtedness, the Court's Order will grant Plaintiff the right to foreclosure and sale of the property.  A hearing will be held to determine the exact amount of the indebtedness.  If necessary, an amended order will be entered reflecting the amount of the indebtedness.

addition, Cadieux, for the second time, has moved for summary judgment on Count V of Plaintiff's complaint.  Plaintiff has also moved for summary judgment on Counts IV and V of its complaint.  All of these motions relate to the Boat Loan.

### 1. Plaintiff is Entitled to Summary Judgment on Count V of its Complaint

The Court begins its analysis of the motions related to the Boat Loan by addressing the parties' arguments as to Count V of Plaintiff's complaint.  In Count V of its complaint, Plaintiff seeks "a declaratory judgment that it has a valid security interest in the entire Boat and that it lawfully took possession of the Boat, pursuant to MCL 440.9609, after default on the Boat Loan by Defendant Tindall."  (Pl.'s Compl. ¶ 29.)

Michigan's version of Article 9 of the Uniform Commercial Code ("UCC") governs secured transactions.  *See, e.g.,* MICH. COMP. LAWS §§ 440.9101-9994.  A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation."  *Id.* § 440.9201(37).  For a security interest to be enforceable and thus attach to the collateral, i.e., the personal "property subject to the security interest," *id.* § 440.9102, three requirements must be satisfied: (1) the secured party must have given value; (2) the debtor must have "rights in the collateral or the power to transfer rights in the collateral to the secured party;" and (3) as relevant to Plaintiff's alleged security interest, the debtor must have "authenticated a security agreement that provides a description of the collateral."  *Id.* § 440.9203(2).

As this Court held in its April 7, 2008 Opinion and Order, "[t]here is no real dispute regarding requirements (1) and (3) listed above."  (4/7/08 Op. & Or. at 12.)  The instant dispute involves whether Tindall had sufficient rights in the Boat to grant Plaintiff a security

interest. Michigan's version of Article 9 of the UCC does not define "rights in the collateral." Nor does it specify the type of "rights in the collateral" that are necessary for a security interest to be enforceable. Comment 6 to section 444.9203 of the Michigan Compiled Laws provides: "A debtor's limited rights in collateral, short of full ownership, are sufficient for a security interest to attach." *Id.* § 440.9203 cmt. 6. Furthermore, in cases where the debtor has rights short of full ownership, the "security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." *Id.* "Whether a non-owner has authority to encumber an owner's property generally depends on the non-Code law of agency, partnership, or corporations." 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE 31-3 (5th ed. 2002).

The parties make a number of arguments as to why they believe they are entitled to summary judgment on Count V. This Court, however, does not believe that it needs to address all of Plaintiff's and Cadieux's arguments. Rather, the Court believes that determining whether Tindall had sufficient rights in the Boat sufficient to grant a security interest is simple in light of Tindall's deposition testimony.

At his deposition, Tindall testified that he has been the President of Cadieux "on and off" since Cadieux's inception in 1991. (Doc. 157-12 at 17.) Tindall further stated that he was not sure whether Cadieux had any other officers. (*Id.*) In addition, Tindall testified that he "created" and "authorized" the lease on the Boat entered into by himself and Cadieux. (*Id.* at 43-44.) Tindall also testified that "Ron Matthews," the person listed as the "President" and "Resident Agent" of Cadieux in the annual report Cadieux filed with the Michigan Department of Labor and Economic Growth ("DLEG") in 1995 and in the corporate

"Updates" Cadieux filed with DLEG from 1997 through 2007 (*see* Doc. 157-10), is actually Tindall.[15]  (Doc. 157-12 at 30.)  Finally, Tindall explained that he keeps "Cadieux's books and records."  (*Id.* at 21.)

In this Court's opinion, based solely upon Tindall's deposition testimony, there is no genuine issue of material fact that Tindall had the actual authority to grant Plaintiff a security interest on Cadieux's behalf.  If Tindall could "create" and "authorize" a lease of the Boat to himself, he could certainly grant a security interest in the Boat on Cadieux's behalf.  Furthermore, it is clear from Tindall's deposition testimony that he controlled all of Cadieux's operations and, therefore, Tindall could grant a security interest in the Boat on Cadieux's behalf.  Cadieux's arguments to the contrary are belied by Tindall's deposition testimony.  Consequently, the Court finds that Tindall had sufficient "rights in the collateral" to render Plaintiff's security interest in the Boat enforceable.

Because (1) Plaintiff has an enforceable security interest in the Boat, (2) there is no dispute that Tindall breached the Boat Loan, and (3) there is no dispute that Plaintiff's seizure of the Boat did not breach the peace when it seized the Boat, *see* MICH. COMP. LAWS § 440.9609, the Court will grant Plaintiff's motion for summary judgment as to Count V of its complaint and enter the requested declaratory judgment.  The Court will therefore deny Cadieux's renewed motion for summary judgment as to Count V.

2. <u>Count IV of Plaintiff's Complaint Will Be Dismissed As Moot</u>

---

[15]Tindall explained in his deposition that he adopted the pseudonym "Ron Matthews" in order to solicit companies for sale in the operation of an investment company he formed in 1982 "without being potentially accused of being an attorney soliciting business."  (Doc. 157-12 at 30.)

In Count IV of its complaint, Plaintiff seeks damages from Tindall based on a fraudulent misrepresentation Tindall allegedly made with respect to the Boat Loan. More specifically, Count IV alleges that before obtaining the Boat Loan, Tindall told Plaintiff that "he was the owner of the Boat and/or had the authority to give Plaintiff a security interest in the Boat." (Pl.'s Compl. ¶ 125.) Plaintiff states that Count IV of its complaint "is an alternative theory of liability to Count V." (Doc. 157 at 1.) Therefore, because Plaintiff is entitled to summary judgment on Count V, Count IV will be dismissed as moot.

## C. Plaintiff's and the Tindall Defendants' Motions Relating to the Business Loan

Counts VI and VII of Plaintiff's complaint and Counts I-V of T&C's counter-complaint involve the Business Loan. Both Plaintiff and Tindall and T&C have moved for summary judgment on Counts VI and VII of Plaintiff's complaint, as well as Counts I-V of T&C's counter-complaint. Before addressing Counts VI and VII of Plaintiff's complaint, which respectively assert claims for breach of the Business Loan promissory note and guaranty, the Court will address Tindall's and T&C's defenses to Counts VI and VII of Plaintiff's complaint, which are asserted by way of Counts I-V of T&C's counter-complaint.

### 1. Plaintiff Did Not Commit the First Substantial Breach of the Business Loan

Tindall and T&C first contend that Plaintiff "breached the [Business Loan], from its inception, by intentionally charging [T&C] approximately double the amount of monthly interest allowed under paragraphs 4.9 and 4.10 of" the Business Loan. Tindall and T&C also argue that any breach of the Business Loan by T&C was rendered nonactionable by Plaintiff's failure to give the required 30 day written notice of default, which, according to

Tindall and T&C, constituted a substantial breach of the Business Loan.  In response, Plaintiff contends that even if it did charge double interest under the Business Loan and failed to give proper notice of default, neither of these alleged breaches are substantial under Michigan law.

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 40 Mich. App. 1, 8-9, 198 N.W. 2d 702, 706 (1972).  This rule, however, "only applies when the initial breach is substantial." *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650, 522 N.W. 2d 703, 707 (1994).  A breach is substantial "where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v. Mercury Metalcraft Co.*, 372 Mich. 567, 574, 127 N.W. 2d 340, 343 (1964).  "Michigan case law indicates that the determination of which breaches are 'substantial' is inextricably tied to the particular facts of the case." *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998).

Based on the undisputed facts in the current record, the Court finds that Tindall's and T&C's failure to pay the undisputed amounts due under the Business Loan constituted the first substantial breach.  Tindall's and T&C's claim that Plaintiff's alleged overcharging of interest or alleged failure to give proper notice of default certainly did not alter the "essential operative elements" of the Business Loan.  *Id.*  Plaintiff's alleged overcharging of interest or alleged failure to give proper notice of default did not prevent Tindall and T&C from

paying the monthly payments that they believed were due under the Business Loan. Tindall and T&C, however, used the alleged overcharging of interest and alleged failure to give proper notice of default to withhold all payments due under the Business Loan, and the Court finds that in doing so, Tindall and T&C committed the first "substantial" breach of the contract. Therefore, Plaintiff is not barred from asserting that T&C and Tindall breached the Business Loan.

Because the Court finds that Plaintiff did not substantially breach the Business Loan, the Court will grant Plaintiff summary judgment on Count I of T&C's counter-complaint. Consequently, Tindall's and T&C's motion for summary judgment will be denied as to Count I of T&C's counter-complaint.

2. Plaintiff Did Not Become T&C's Agent or Fiduciary

As alleged in Counts II and III of T&C's counter-complaint, Tindall and T&C also assert that Plaintiff became T&C's agent and fiduciary to hold "the funds in escrow in a 'Hold Back Account' for the benefit of [T&C, Tindall, and MART]" and "[a]pply funds escrowed in the Hold Back Account to the timely and correct payment of monthly interest due under the [Business Loan] and other accounts." (Doc. 131 ¶ 8.)

Tindall's and T&C's "breach of agency" claim fails because no agency relationship was created between T&C and Plaintiff. Michigan courts have defined agency "as 'a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by actions or words.'" *Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071, 1078 (E.D. Mich. 2004)(quoting *Breighner v. Mich. High Sch. Ath. Ass'n.*, 255 Mich. App. 567, 662 N.W. 2d 413 (2003)).

As the Michigan Supreme Court stated long ago:

> The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and *third persons*. To the proper performance of his functions, therefore, it is absolutely essential that there shall be *third persons* in contemplation between whom and the principal legal obligations are to be thus created, modified or otherwise affected by the acts of the agent.

*Stephenson v. Golden*, 279 Mich. 710, 735, 276 N.W. 849, 858 (1937)(emphasis added); *see also Uniprop, Inc. v. Morganroth*, 260 Mich. App. 442, 448, 678 N.W. 2d 638, 641 (2004)("A characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and *third persons*.") Here, there is no evidence that the Business Loan required Plaintiff to act on T&C's behalf in bringing about, modifying, accepting performance of, or terminating contractual obligations between T&C and third persons. Because T&C's claim for "breach of agency" fails as a matter of law, the Court will grant summary judgment in favor of Plaintiff and deny Tindall and T&C's motion for summary judgment on Count II of T&C's counter-complaint.

With regard to Count III of T&C's counter-complaint, Tindall and T&C argue that the creation of the holdback accounts gave rise to a fiduciary relationship with Plaintiff. Tindall and T&C further aver that Plaintiff breached its alleged fiduciary duties when it failed to make timely payments on the four loans at issue in this case from the holdback accounts and maintained a "continuing 'perpetual default' contrary to the admitted intent of the parties to the" Business Loan. (Doc. 131 at 13.)

25

"A 'fiduciary relationship' arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F. Supp. 2d 743, 757 (E.D. Mich. 2002)(citing *First Public Corp. v. Parfet*, 246 Mich. App. 182, 191, 631 N.W.2d 785, 791 (2001)). A fiduciary relationship, however, does not normally arise between a borrower and lender. *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998). "To impose such a duty would be too radical a departure from well-established, traditional banking laws." *Id.* (internal quotations and citations omitted).

T&C's breach of fiduciary duty claim against Plaintiff fails because the Business Loan did not create a fiduciary relationship between Plaintiff and T&C or Tindall. The Business Loan merely created holdback accounts that were held in a money market account with Plaintiff that was in the name of T&C. (*See* Doc. 140-8.) This Court does not believe that the creation of the holdback accounts gave rise to a fiduciary relationship between Plaintiff and Tindall/T&C. There is nothing in the record suggesting that the Business Loan created a special, fiduciary relationship between Tindall/T&C and Plaintiff. Consequently, the Court will grant Plaintiff's motion for summary judgment as to Count III of T&C's counter-complaint and deny Tindall's and T&C's motion for summary judgment regarding the same. Furthermore, because T&C's claims for "breach of agency" (Count II) and breach of fiduciary duty (Count III) fail, Count IV of T&C's counter-complaint which seeks an "accounting" for Plaintiff's alleged breach of agency and fiduciary duties must also fail. Moreover, Count V of T&C's counter-complaint, which seeks a declaratory judgment and injunction and is dependent on Counts I-III of T&C's counter-complaint, must also fail.

Accordingly, the Court will also grant Plaintiff's motion for summary judgment on Counts IV and V of T&C's counter-complaint and deny Tindall's and T&C's motion for summary judgment regarding the same.

### 3. Plaintiff is Entitled to Summary Judgment on Count VI of its Complaint (Breach of the Business Loan)

The Business Loan, including the Business Loan Promissory Note, are contracts under Michigan law. Under Michigan law, if contracts are unambiguous, they are enforced as written. *Shaffner v. City of Riverview*, 154 Mich. App. 514, 520, 397 N.W. 2d 835, 838 (1987). The Business Loan unambiguously provides that T&C's failure to "fully pay any principal or interest or any other amount owing on the Loan when due . . . within 10 days after written notice" constitutes an "Event of Default." (Doc. 140-3 at § 6.1) Here, it is undisputed that T&C failed to make payments on the amounts due under the Business Loan after March 29, 2007, and that there are amounts due under the Business Loan that are outstanding. Consequently, the Court finds that T&C breached the Business Loan. Thus, the Court will grant Plaintiff's motion for summary judgment as to Count VI of its complaint and deny Tindall's and T&C's motion for summary judgment regarding the same.

### 4. Plaintiff is Entitled to Summary Judgment on Count VII of Plaintiff's Complaint (Breach of the Business Loan Guaranty)

Tindall personally guaranteed T&C's obligations under the Business Loan in a writing styled "Guaranty of Loan." (*See* Doc. 158-9.) More specifically, Tindall personally guranteed "full and prompt payment and collection when due" of the amounts due under the Business Loan. (*Id.* at 1.) In Count VII of its complaint, Plaintiff alleges that Tindall breached this "Guaranty" by failing to make full and prompt payment under the terms of the

27

Business Loan.

"[A] guarantee contract is an enforceable undertaking or promise by one person collateral to a primary or principal obligation of another which binds the person making the promise to performance of the primary obligation in the event of nonperformance, the secondary party thus becomes primarily responsible for performance." *Angelo Iafrate Co. v. M & K Dev. Co.*, 80 Mich. App. 508, 514, 264 N.W. 2d 45, 48 (1978). As with any contract, where the language of a guarantee contract is unambiguous, the construction of the guarantee contract is a question of law. *First Nat'l Bank v. Redford Chevrolet Co.*, 270 Mich. 116, 121, 258 N.W. 221, 223 (1935). Because Tindall failed to fulfill his obligations as personal guarantor of T&C's obligations under the Business Loan, Tindall has breached his personal guarantee of the Business Loan. Consequently, the Court will grant Plaintiff's motion for summary judgment and deny Tindall's and T&C's motion for summary judgment regarding Count VII of Plaintiff's complaint.

### D. The Parties' Motions Relating to Counts VIII and IX of Plaintiff's Complaint

Plaintiff, as well as T&C and Tindall, have moved for summary judgment on Counts VIII and IX of Plaintiff's complaint. Counts VIII and IX of Plaintiff's complaint assert fraudulent misrepresentation claims against T&C and Tindall, respectively. More specifically, in Count VIII of its complaint, Plaintiff alleges that "[i]n conjunction with the Business Loan dated December 29, 2006, [] T&C caused to be delivered to [] Plaintiff a letter dated December 15, 2006, . . . from one Gregory J. Saffady ('Saffady'), regarding attorney fees due to [] T&C in Case No. 04-cv-75061, which was allegedly pending in the United

States District Court for the Eastern District of Michigan." (Pl.'s Compl. ¶ 174.) In this letter, dated December 15, 2006, Saffady stated that T&C, as of December 1, 2006, was owed $195,770.45 in attorney fees and costs for serving as "Receiver's counsel" in Case No. 04-cv-75061. As it turns out, however, Saffady's receivership appointment and T&C's appointment as "Receiver's counsel" in Case No. 04-cv-75061 was dissolved on February 14, 2006, and the district court's order dissolving the receivership was on appeal at the time Tindall presented the Saffady letter to Plaintiff. Plaintiff alleges that in reliance on this letter it loaned T&C $147,000.00, i.e., the Business Loan. Plaintiff further alleges that T&C committed fraud when it provided the Saffady letter and failed to disclose the district court's order dissolving Saffady's receivership and T&C's appointment as "Receiver's counsel."

In Count IX of its complaint, Plaintiff seeks damages from Tindall based on an alleged fraudulent misrepresentation Tindall made in connection with the Home and Boat Loans. More specifically, Plaintiff alleges in Count IX of its complaint that before obtaining the Home and Boat Loans, Tindall stated that he had not declared bankruptcy within the last ten years on credit applications completed prior to obtaining the Boat and Home Loans.

Prior to addressing the parties' arguments regarding the merits of Counts VIII and IX of Plaintiff's complaint, the Court will address T&C's argument that Count VIII of Plaintiff's complaint fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). The Sixth Circuit has stated that "under Rule 9(b), a plaintiff must 'allege the time, place, and content of the alleged misrepresentation

. . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)(quoting *U.S. ex rel Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007)).

This Court believes that Plaintiff has sufficiently alleged the time, place, and content of the alleged misrepresentation. Indeed, Plaintiff alleges that T&C omitted reference to the district court's order vacating Saffady's receivership and T&C's appointment as "Receiver's counsel" and the appeal of the same. (*See* Pl.'s Compl. ¶ 185.) Plaintiff alleges that this omission was fraudulent. (*Id.* ¶ 186.) Plaintiff further alleges that T&C made this omission to induce Plaintiff to rely on the representations in the Saffady letter, namely that $195,770.45 in fees and costs was due to T&C for its work as "Receiver's counsel" and that this "amount can be paid THIRTY (30) days after entry of an appropriate Order of the U.S. District Court." (*Id.* ¶ 186 (emphasis in original).) Plaintiff's complaint then goes on to specifically allege the "material facts" that Plaintiff believes were withheld from the Saffady letter. (*See id.* ¶ 187.) Accordingly, the Court believes that Count VIII of Plaintiff's complaint satisfies the pleading requirements of Rule 9(b). T&C's arguments to the contrary are without merit.

The Court will now address the parties' arguments as to the merits of Counts VIII and IX of Plaintiff's complaint. To maintain a claim for fraudulent misrepresentation under Michigan law, a plaintiff must prove:

> (1) The defendant made a material representation. (2) The representation was false. (3) When the defendant made the representation, it knew that it was false, or the defendant made it recklessly, without knowledge of its truth, and as a positive assertion. (4) The defendant made the representation with the

> intention that it should be acted on by the plaintiff. (5) The plaintiff acted in reliance on the representation. (6) The plaintiff suffered injury due to his reliance on the representation.

*The Mable Cleary Trust v. The Edward Marlah Muzyl Trust*, 262 Mich. App. 485, 499-500, 686 N.W. 2d 770, 772 (2004).

Tindall's and T&C's motion and their response to Plaintiff's motion take issue with only the reliance element of Plaintiff's fraudulent misrepresentation claims. More specifically, in arguing that Plaintiff cannot maintain its fraudulent misrepresentation claim alleged in Counts VIII and IX of its complaint, Tindall and T&C invoke a specific principle of Michigan law: "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v. First of Mich. Corp.*, 195 Mich. App. 470, 474, 491 N.W. 2d 851, 853 (1992)(citing *Schuler v. Am. Motors Sales Corp.*, 39 Mich. App. 276, 280, 197 N.W. 2d 493, 495 (1972)). Stated differently, "someone who knows that a representation is false cannot rely on that representation. Such knowledge prevents not only reasonable reliance, it prevents any reliance at all." *Phinney v. Perlmutter*, 222 Mich. App. 513, 535, 564 N.W. 2d 532, 547 (1997). This bar to the reliance requirement of a fraudulent misrepresentation claim is not without limitation. It applies only in cases where the plaintiff was "either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *The Mable Cleary Trust*, 262 Mich. App. at 501, 686 N.W. 2d at 783. Moreover, the burden is on the defendant to show that the plaintiff had knowledge that the representation was false. *See Papin v. Demski*, 383 Mich. 561, 570, 177 N.W. 2d 166, 171 (1970).

With respect to Count VIII, T&C first argues that Plaintiff knew that the case in which it was serving as "Receiver's counsel" was on appeal (and presumably would have known that or should have inquired as to whether Saffady's receivership had been dissolved). T&c claims that Plaintiff's knowledge was based on the fact that Tindall sent Plaintiff an email dated November 27, 2006, attaching a copy of its accounts receivable, which listed case numbers "06-1325, 1326" and "04CV75061" as the cases in which T&C was owed $160,770.45 in fees and had an "ATTORNEY LIEN RECEIVERSHIP REAL ESTATE FILING JUDGMENT LIEN" as security. (*See* Doc. 147-4.) T&C claims that this copy of its accounts receivable gave Plaintiff knowledge that the case in which T&C was owed fees and costs as "Receiver's counsel" was on appeal because T&C's accounts receivable listed more than one case number.

The Court does not believe that T&C's accounts receivable gave Plaintiff knowledge that the Saffady letter was misleading. While an experienced attorney practicing in this Court and the Sixth Circuit may have recognized the three case numbers as being from this Court and the Sixth Circuit, there is no direct evidence that an attorney reviewed T&C's accounts receivable. Consequently, T&C's accounts receivable did not give Plaintiff knowledge of the fact that the case referenced in the Saffady letter was on appeal. Furthermore, even if T&C's accounts receivable gave Plaintiff knowledge that the case referenced in the Saffady letter was on appeal and Tindall told Plaintiff that the case was on appeal, (*see* Doc. 161-4, T&C's Rep. Br. Ex. 2, Tindall Aff. 6.), this certainly did not give Plaintiff knowledge that Saffady's receivership had been dissolved and T&C's ability to collect the fees and costs as "Receiver's counsel" may have been in jeopardy. Therefore, the

Court is not persuaded by T&C's arguments regarding Plaintiff's knowledge of the appeal are unpersuasive.

Again with respect to Count VIII, T&C argues that because "[t]he entire file in the subject case, in both courts, including all orders, appeals, briefs, objections, etc, were a matter of public record readily available to Plaintiff" (Doc. 147 at ¶6), Plaintiff cannot show that it justifiably relied on T&C's alleged misrepresentation. The same principle of Michigan law upon which T&C relies to make this argument, i.e., that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant," *Webb*, 195 Mich. App. at 474, 491 N.W. 2d at 853, applies only in cases where the plaintiff was "either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *The Mable Cleary Trust*, 262 Mich. App. at 501, 686 N.W. 2d at 783. Moreover, for more than a century, Michigan courts have held that the defrauded party owed no duty to the party who defrauded him to use due diligence to discover the fraud. *See, e.g., Smith v. McDonald*, 139 Mich. 225, 229, 102 N.W. 738, 739 (1905). Therefore, T&C's argument that Plaintiff could have discovered the fact that Saffady's receivership had been dissolved and such dissolution was on appeal is immaterial, because Plaintiff did not have an affirmative duty to discover such facts even though they may have been available in public records. Accordingly, because there is no genuine issue of material fact as to whether Plaintiff knew that Saffady's receivership had been dissolved and such dissolution was on appeal, and because T&C do not make any other arguments as to why Plaintiff's motion for summary judgment on Count VIII should be denied, the Court will

deny T&C's motion for summary judgment on Count VIII of Plaintiff's complaint.

With respect to Count IX, Tindall asserts a variety of different reasons as to why he believes Plaintiff had knowledge that he had been declared bankrupt ten years prior to the date that he submitted the credit applications for the Home and Boat Loans. In this Court's opinion, only one of these arguments creates a genuine issue of material fact. Specifically, this Court believes that there is a genuine issue of material fact as to whether Plaintiff knew that Tindall had been declared bankrupt based on the "'3 bureau' credit report" Tindall allegedly faxed to Plaintiff. In his affidavit, Tindall states that "[o]n February 8, 2005, [he] provided Franklin with a copy of a '3 bureau' credit report that [he] had obtained on or about January 5, 2005 on the Internet showing [his] previous bankruptcy as an 'adverse' public record." (Doc. 107-3 ¶ 3.) To support this assertion, Tindall provides a "Fax Cover Sheet," which includes someone's handwriting stating that this fax was sent to "Toni" on "2/8." (*See id.*, Ex. 1A.) Ms. Antoinette R. Waddell, Plaintiff's Assistant Vice President – Branch Account Executive– the "Toni" who is apparently listed on the "Fax Cover Sheet"– states that she has personally searched the files associated with the Boat and Home Loan and was unable to locate the "'3 bureau' credit report" Tindall allegedly faxed on February 8, 2005. (Doc. 119-2 ¶¶ 7-8.) Ms. Waddell also states that she does not recall ever receiving this credit report from Tindall. (*Id.* ¶ 9.) Notwithstanding Ms. Waddell's denials, the evidence in the record regarding whether the "'3 bureau' credit report" was received by Plaintiff is conflicting. Therefore, this Court believes that there is a genuine issue of material fact as to whether Plaintiff knew or should have known that Tindall had been declared bankrupt in the last ten years based on this "'3 bureau' credit report."

Finally, as to both Counts VIII and IX of Plaintiff's complaint, the Court notes that "it is hornbook law that a claimant cannot receive a double recovery for the same injury, even where alternate legal theories will support the same finding of liability." *Scarff Bros., Inc. v. Bischer, Farms, Inc.*, 546 F. Supp. 2d 473, 487 (E.D. Mich. 2008). Here, Plaintiff has failed to present any evidence that T&C's and Tindall's allegedly fraudulent misrepresentation caused Plaintiff to suffer any injury apart from that suffered as a result of T&C's breach of the Business Loan and Tindall's breaches of the Home and Boat Loans. Consequently, Plaintiff is not entitled to summary judgment on Counts VIII and IX for this reason as well.

In conclusion, with respect to Count VIII, the Court finds that there is no genuine issue of material fact that Plaintiff relied on T&C's fraudulent misrepresentation in the Saffady letter. Consequently, T&C's motion for summary judgment on Count VIII of Plaintiff's complaint will be denied.

However, this Court finds that genuine issues of material fact exist as to whether Plaintiff relied on any fraudulent misrepresentation alleged in Count IX of its complaint. Consequently, the parties' motions for summary judgment relating to Count IX will be denied. The Court also concludes, as to both Counts VIII and IX of Plaintiff's complaint, that there are genuine issues of material fact as to whether T&C's and Tindall's allegedly fraudulent misrepresentations caused Plaintiff to suffer damages beyond that which was owed under the Home, Boat, and Business Loans. Consequently, the parties' motions for summary judgment relating to Counts VIII and IX of Plaintiff's complaint will be denied on this basis.

### E. Plaintiff's Motion for Summary Judgment on Counts VI and IX of T&C's Counter-Complaint

#### 1. Count VI of T&C's Counter-Complaint

In Count VI of its counter-complaint, T&C alleges that Plaintiff breached its statutory duty of good faith under sections 440.1203 and 440.4103 of the Michigan Compiled Laws. (T&C's Counter-Compl. ¶¶ 48-53.)  More specifically, T&C alleges that Plaintiff breached its alleged statutory duty of good faith when it created the default under the Business Loan "through its own breach of fiduciary duty and breach of contract and agency," failed to provide T&C with an accounting, and "failed to make the corrections required by law." (*Id.* ¶ 52.)

Contrary to T&C's assertion, under Michigan law, whether under the Uniform Commercial Code sections cited by T&C in Count VIII of its counter-complaint or the general principles of Michigan contract law, there is no independent cause of action "for breach of an implied covenant of good faith and fair dealing separate from an action on the underlying contract."  *Burton v. Beaumont Hosp.*, 373 F. Supp. 2d 701, 718 (E.D. Mich. 2005); *see also Pidcock v. Ewing*, 371 F. Supp. 2d 870, 880 (E.D. Mich. 2005); *Metro. Alloys Corp. v. Considar Metal Mktg., Inc.*, No. 06-12667, 2007 U.S. Dist. LEXIS 70744, at *30-31 (E.D. Mich. Sept. 25, 2007); *Tubby's #14, Ltd. v. Tubby's Sub Shops, Inc.*, No. 04-70918, 2006 U.S. Dist. LEXIS 69553, at *50 (E.D. Mich. Sept. 27, 2006); *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476, 666 N.W. 2d 271, 279 (2003).  T&C's argument that Count VI is merely an alternative claim for breach of contract is unpersuasive. Therefore, Count VI of T&C's counter-complaint fails as a matter of law and Plaintiff is

entitled to summary judgment as to this claim.

2.  Count IX of T&C's Counter-Complaint

In Count IX of its counter-complaint, T&C alleges a claim against Plaintiff under the anti-tying provisions of the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1464(q)(1)(A). T&C alleges "[t]he requirement that a customer, corporate [*sic*] or individual, appoint [Plaintiff] its agent and fiduciary, and consent to [Plaintiff] making payments of monthly billings on their behalf, as a condition to making a loan, is not a 'loan, discount, deposit, or trust service' [under 12 U.S.C. § 1464(q)(1)]. Therefore, such requirement is an illegal trying [*sic*] practice and a violation of 12 USC 1464(q)." (T&C's Counter-Compl. ¶ 86.) Plaintiff seeks summary judgment on Count IX of T&C's counter-complaint. More specifically, Plaintiff contends that T&C is unable to prove that it engaged in any actions that constitute illegal tying under the HOLA.

As relevant to this case, § 1464(q)(1) provides:

> A savings association may not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--
>
> (A) that the customer shall obtain additional credit, property, or service from such savings association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service . . . .

12 U.S.C. § 1464(q)(1)(A). A violation of the anti-tying provision of HOLA requires a party to prove: "(1) the [savings association] imposed an anti-competitive tying arrangement, that is, it conditioned the extension of credit upon the borrower's obtaining or offering additional credit, property or services to or from the bank or its holding company; (2) the arrangement

37

was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the [savings association]."[16] *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 565 (6th Cir. 2003). Plaintiff argues that T&C cannot prove the second element of an anti-tying claim. This Court agrees with Plaintiff.

T&C has failed to proffer any evidence showing that Plaintiff's actions in this case are unusual in the banking industry. T&C simply states in a conclusory fashion that "[b]anks do not . . . usually or customarily take responsibility to pay their customer's monthly bills." (Doc. 162 at 12.) This Court, however, does not believe that requiring a borrower to authorize the automatic transfer of certain money from one of its accounts to pay amounts due with respect to certain loans the borrower has with a savings association is unusual. Therefore, notwithstanding T&C's conclusory arguments to the contrary, the Court finds that T&C has failed to show that there is a genuine issue of material fact with respect to the second element of an anti-tying claim. Consequently, the Court will grant Plaintiff's motion for summary judgment on Count IX of T&C's counter-complaint.

## IV. Conclusion

With respect to the Home Loan, because the Court has determined that the mortgage given to Plaintiff by Tindall, in his capacity as trustee of MART, was valid and enforceable, and because the Court finds that none of the defenses asserted by Tindall or MART have

---

[16] Section 1464(q)(1) of the HOLA is materially identical to section 106 of the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972. *Compare* 12 U.S.C. § 1464(q)(1) *with* 12 U.S.C. § 1972. Therefore, courts refer to case law interpreting the anti-tying provisions of the BHCA when addressing anti-tying claims under HOLA. *See Camunas Cordova v. Banco Bilbao Vizcaya De P.R.*, 73 F. Supp. 2d 133, 137 (D.P.R. 1999)(collecting cases).

merit, the Court grants Plaintiff's motion for partial summary judgment against Tindall and MART on Count I. Tindall and MART's motions for summary judgment Count I of Plaintiff's complaint are denied.

As to the Boat Loan, the Court, having concluded that Tindall had the authority to give Plaintiff a security interest in the Boat on Cadieux's behalf, hereby grants Plaintiff's motion for summary judgment on Count V of its complaint. Having granted Plaintiff's motion for summary judgment on Count V of Plaintiff's complaint, the Court hereby denies Plaintiff's motion for summary judgment on Count IV of its complaint because the Court deems Count IV to be moot. Tindall's motion for summary judgment on Count IV of Plaintiff's complaint is also denied, as is Cadieux's renewed motion for summary judgment on Count V of Plaintiff's complaint.

With respect to the Business Loan, having concluded that T&C and Tindall have defaulted on their obligation to make payments on the Business Loan and having found that Plaintiff did not commit the first substantial breach or breach of agency or fiduciary duty, the Court hereby grants Plaintiff's motion for summary judgment on Counts VI and VII of its complaint and grants Plaintiff's motion for summary judgment on Counts I-V of T&C's counter-complaint. T&C's and Tindall's motions for summary judgment on Counts VI and VII of Plaintiff's complaint and Counts I-V of T&C's counter-complaint are denied.

The remaining motions for summary judgment presently before the Court are disposed of as follows. Having found that there is no independent claim for a breach of the statutory duty of good faith under Michigan law and having determined that T&C failed to create a genuine issue of material fact as to whether Plaintiff's banking practices with regard to the

Business Loan were unusual in the banking industry, the Court hereby grants Plaintiff's motion for summary judgment on Counts VI and IX of T&C's counter-complaint. Because genuine issues of material fact exist as to whether Plaintiff relied on Tindall's alleged fraudulent misrepresentation that he had not been declared bankrupt within the last ten years prior to submitting the credit applications for the Home and Boat Loan, and because genuine issues of material fact exist as to whether T&C's allegedly fraudulent misrepresentation to obtain the Business Loan and Tindall's allegedly fraudulent misrepresentations to obtain the Home and Boat Loans caused Plaintiff to suffer damages beyond that which was owed under the Home, Boat, and Business Loans, the Court denies Plaintiff's motions for summary judgment on Counts VIII and IX of its complaint, T&C's motion for summary judgment on Count VIII of Plaintiff's complaint, and Tindall's motion for summary judgment on Count IX of Plaintiff's complaint.

An Order consistent with this Opinion shall issue forthwith.


s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Sheri B. Cataldo
Mark A. Chaban
Michelle M. Wezner
Chiara F. Mattieson
Michael E. Tindall