UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN BANK, a division of First
Place Bank, a federally chartered savings
association,

      Plaintiff,

v.

MICHAEL EDWARD TINDALL,
individually; MART TRUST u/a/d
August 28, 1992; TINDALL & COMPANY
P.C., a Michigan professional corporation;
CADIEUX CORP., INC., a Michigan
corporation; MEMBER FIRST
MORTGAGE LLC a/k/a MEMBER FIRST
MORTGAGE, a Michigan limited liability
company; and UNITED STATES OF
AMERICA,

      Defendants.
      _____/

Case No. 07-13748

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 29, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

Franklin Bank ("Plaintiff") filed this lawsuit against Michael Edward Tindall ("Tindall"), in his individual capacity and as trustee of MART Trust ("MART"), Tindall & Company, P.C. ("T&C"), Cadieux Corp., Inc. ("Cadieux"), Michigan Catholic Credit Union

("MCCU"), Michigan First Mortgage ("MFM"), and the United States of America.[1] Plaintiff's complaint, which invokes this Court's diversity jurisdiction, asserts nine separate counts relating to four separate loans Plaintiff extended to Tindall or T&C. Presently before this Court are Plaintiff's motion for partial summary judgment on Count I of its complaint as to MFM and MCCU's motion for partial summary judgment on Count I of Plaintiff's complaint. The Court held a hearing on these motions on September 24, 2008.

## I. Relevant Factual Background

On March 7, 2005, Tindall entered into a "Home Equity Line Agreement" with Plaintiff for $325,000 (hereinafter referred to as the "Home Loan"). To secure repayment of the Home Loan, Plaintiff obtained a mortgage from Tindall, acting as trustee of MART, on property located at 55 Merriweather Road, Grosse Pointe Farms, Michigan 48236 (hereinafter referred to as the "Property"). Plaintiff's mortgage was recorded in the Wayne County Register of Deeds on March 29, 2005.

Prior to extending the $325,000 Home Loan, Plaintiff required Tindall to payoff or discharge a mortgage in the amount of $200,000 that Tindall had granted to First Franklin Financial Corporation ("First Franklin").[2] Plaintiff required Tindall to payoff this mortgage because Plaintiff wanted its mortgage to "replace" First Franklin's $200,000 mortgage and to secure the position of second lien holder. The position of first lien holder,

---

[1]On November 13, 2007, by stipulation of the parties, the United States of America was dismissed without prejudice. (Doc. No. 39.)

[2] First Franklin has no relation or affiliation with Plaintiff.

according to Plaintiff, would still be occupied by First Franklin, but only as to a $625,000 mortgage it also had on the Property.[3]

Around the same time that Tindall obtained the Home Loan from Plaintiff, he also was consulting other lenders to refinance both of the first and second mortgages he had with First Franklin. Tindall ultimately obtained loans from MFM and MCCU and granted MFM and MCCU mortgages in the Property. On February 25, 2005, Tindall, acting individually and as trustee for MART, granted MFM a mortgage on the property. MFM's mortgage on the property secured the repayment of a $1,125,000 home equity loan MFM extended to Tindall on February 25, 2005. MFM's mortgage was recorded on April 4, 2005. In addition, on March 11, 2005, Tindall entered into a home equity open-end credit agreement with MCCU pursuant to which Tindall received a loan in the amount of $250,000. To secure repayment of MCCU's loan, Tindall, acting individually and as trustee of MART, granted MCCU a mortgage in the property. MCCU recorded its mortgage on March 23, 2005.

Plaintiff, MFM, and MCCU now dispute the priority of their respective mortgages on the Property.

II. **Standard of Review**

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

---

[3]For ease of reference, in the remainder of this Opinion and Order, the Court will refer to First Franklin's $200,000 mortgage as its "second mortgage" and its $625,000 mortgage as the "first mortgage."

56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

**A. Whether Plaintiff Has a Valid Mortgage Interest On the Property**

MFM initially argues that Plaintiff's mortgage on the Property is invalid because MART did not have title to the Property on March 7, 2005, the date it gave Plaintiff its mortgage. In an Opinion and Order issued on October 27, 2008, this Court held that Plaintiff's mortgage was valid. For the reasons stated in that decision, MFM's argument that Plaintiff's mortgage is invalid is rejected.

4

### B. Whether Plaintiff's Mortgage has Priority over MFM's Mortgage

Having found that the mortgage Plaintiff obtained from MART is valid, the Court will now address whether Plaintiff's mortgage has priority over MFM's mortgage. As indicated above, MFM's mortgage, while executed prior to Plaintiff's mortgage with MART, was recorded after Plaintiff recorded its mortgage. Consequently, according to Plaintiff, its mortgage should take priority. MFM does not dispute that Plaintiff's mortgage was recorded before its mortgage. MFM, however, argues that Plaintiff had notice of its mortgage, and thus, Plaintiff is not protected under Michigan's recording act.

Michigan has what is known as a race-notice recording statute, which applies to all conveyances of real estate including mortgages. The relevant portion of Michigan's race-notice statute provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. . . .

MICH. COMP. LAWS § 565.29. "The clear import of [this] statute[] . . . is that the first instrument concerning real estate to be recorded takes priority over later-recorded instruments of whatever sort." *Graves v. Am. Acceptance Mortgage Co.*, 467 Mich. 308, 312, 652 N.W. 2d 221, 223 (2002). Furthermore, "[a] good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Mich. Nat'l Bank & Trust Co. v. Morren*, 194 Mich. App. 404, 410, 487 N.W. 2d 784, 786 (1992). Conversely, "[a] person who has notice of a possible defect in the vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser . . . ." *Royce v. Duthler*, 209

5

Mich. App. 682, 690, 531 N.W. 2d 817, 821 (1995). "Notice" under Michigan's decisional law can be either actual or constructive, and "the burden of proving notice, either actual or constructive, is on the party alleging it." *Ooley v. Collins*, 344 Mich. 148, 159, 73 N.W. 2d 464, 470 (1955)(citation omitted).

    1. <u>Constructive Notice</u>

MFM first asserts that Plaintiff had constructive notice of its mortgage in the Property. Constructive notice exists "[w]hen a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make" such inquiries.[4] *Kastle v. Clemons*, 330 Mich. 28, 31, 46 N.W. 2d 450, 450 (1951). As the Michigan Court of Appeals has explained, "[t]he relevant issues are whether the facts were sufficient to give rise to the need to make further inquiry and, if so, whether due diligence was exercised in making the inquiry." *Wash. Mutual Bank v. Cmty. Shores Bank*, No. 274959, 2007 Mich. App. LEXIS 2467, at *5 (Mich. Ct. App. Oct. 25, 2007)(citing *Am. Fed. S&L v. Orenstein*, 81 Mich. App. 249, 252, 265 N.W. 2d 111, 112 (1978)).

---

[4]Although constructive notice under Michigan law also includes "all matters properly of record," *Richards v. Tibaldi*, 272 Mich. App. 522, 540, 726 N.W. 2d 770, 781 (2006), it is undisputed that MFM's mortgage was not recorded at the time Plaintiff obtained its Mortgage.

Here, it is undisputed that to secure the Home Loan Plaintiff extended to Tindall, Plaintiff required Tindall or MART to grant it a mortgage that Plaintiff believed would replace a second mortgage Tindall had granted to First Franklin on the Property. As stated by David Gebhardt, a former employee of Franklin who was the loan officer responsible for processing the Home Loan, Plaintiff "advised Tindall that the purpose of the Home Loan was to replace his existing second mortgage of $200,000 with First Franklin Financial Corp. ('First Franklin') which Tindall was personally paying off, with a new second mortgage from [Plaintiff], which was going to be behind his existing first mortgage of $675,000 with First Franklin." (Doc. No. 108-13, Gebhardt Aff. ¶ 8.) Plaintiff states that, prior to extending the Home Loan to Tindall, it obtained a title commitment listing the various, and possibly outstanding, mortgages and liens on the Property. (*Id.* ¶ 14.) Plaintiff states that it informed Tindall that before it would extend the Home Loan, Tindall needed to provide proof of payoff or discharge of certain outstanding mortgages, including the $200,000 second mortgage Tindall had with First Franklin. (*Id.*) Plaintiff did not require proof of payoff for Tindall's $675,000 first mortgage with First Franklin and denies any knowledge that Tindall was refinancing his "first mortgage of $675,000 with First Franklin." (*Id.* ¶ 16.) Whether Plaintiff had reason to suspect this or not, it is undisputed that Tindall used a portion of the loan proceeds he obtained from MFM to payoff the $200,000 second mortgage he had with First Franklin.

MFM argues that the fact that Plaintiff required proof of the payoff of the $200,000 second mortgage with First Franklin should have prompted Plaintiff to inquire about the source of the funds Tindall used to payoff the $200,000 second mortgage with First Franklin.

MFM contends that it is standard practice in the mortgage industry "to require proof of the source of large deposits or other cash payments associated with the lending of funds as part of the due diligence process associated with approving mortgage loans or lines of credit." (Doc. No. 125-17, Sean Mansell Aff. ¶ 9.) MFM asserts that Plaintiff's failure to verify the source of the funds for the payoff of the $200,000 second mortgage with First Franklin was unreasonable, and thus, the Court should find that Plaintiff had constructive notice of MFM's mortgage.

The Court finds that there is a genuine issue of material fact as to whether Plaintiff should have inquired as to the source of the funds Tindall used to payoff his $200,000 second mortgage with First Franklin. First, it appears that the proof of the payoff Tindall may have provided to Plaintiff consisted of a payoff letter from First Franklin listing the amount owed on its mortgage. There are two versions of this document in the record. One version is addressed to MFM and lists MFM's information in the heading. The other version had any reference to MFM redacted. Plaintiff has provided evidence that it received the redacted version of this payoff letter, while Tindall claims that he provided Plaintiff with the unredacted version of the payoff letter addressed to MFM. If Plaintiff received the unredacted version of the payoff letter addressed to MFM, this Court believes that Plaintiff may have had a duty to inquire further about the source of the funds Tindall was using to payoff the second mortgage with First Franklin. Because there is conflicting evidence in the

record on this issue, this Court cannot conclude as a matter of law that Plaintiff received the unredacted version of the payoff letter.

Furthermore, MFM contends that, even if Plaintiff did not receive the unredacted version of the letter, Plaintiff should have inquired as to the source of the funds Tindall used to payoff the second mortgage of $200,000 with First Franklin. MFM has provided evidence that it is standard practice in the mortgage industry to inquire as to the source of such large deposits associated with the lending of funds. While Plaintiff suggests that this evidence should not be considered because Mr. Mansell, MFM's employee who submitted the affidavit proffering such evidence, has not been qualified as an expert, Plaintiff fails to offer any evidence suggesting that this is not the standard practice in the mortgage industry. Finally, although Plaintiff contends that it conducted a reasonable inquiry by obtaining a title commitment and discussing the outstanding mortgages listed on this title commitment with Tindall, in this Court's opinion, there exists a genuine issue of material fact as to whether Plaintiff should have inquired further about the source of the funds Tindall used to payoff the $200,000 second mortgage with First Franklin. Therefore, the Court cannot decide, as a matter of law, whether Plaintiff had *constructive* notice of MFM's mortgage. *See Wash. Mutual Bank*, 2007 Mich. App. LEXIS 2467, at *6-7.

2. Actual Notice

MFM also argues that Plaintiff had actual knowledge of MFM's mortgage in the Property. In so arguing, MFM argues that "Plaintiff's claim fails as Tindall has previously testified that he expressly informed Plaintiff that he was obtaining additional financing from MFM[] and that he had granted MFM a related mortgage interest in the [Property]." (MFM's

9

Resp. Br. at 11.) Although MFM fails to cite a specific paragraph of Tindall's previously filed affidavit for this proposition, it appears that MFM is relying on paragraph 7 of that affidavit, in which he stated that "David Gebhardt, Franklin Bank's Regional Consumer Lending Coordinator, knew that [he] intended to refinance both [of his] existing mortgages" with First Franklin. (Doc. No. 58-7, Tindall Aff. ¶ 7.) This statement does not support MFM's proposition. Simply stated, there is no statement in Tindall's previously filed affidavit that he "expressly informed" Plaintiff that he was obtaining additional financing from MFM and that he had granted MFM a related mortgage interest in the Property. At most, paragraph 7 of Tindall's affidavit stands for the proposition that Tindall told Plaintiff that he was seeking to refinance both mortgages he had with First Franklin, which may have required Plaintiff to inquire further as to the refinancing on Tindall's first mortgage with First Franklin. Because MFM's reliance on Tindall's affidavit is misplaced and this is the only evidence MFM refers to in support of its argument that Plaintiff had actual notice of its mortgage, the Court finds that there is no genuine issue of material fact as to whether Plaintiff had *actual* notice of MFM's mortgage in the Property.

### C. Whether MCCU's Mortgage has Priority over Plaintiff's Mortgage

The final issue that must be addressed in this Opinion and Order pertains to MCCU's motion for partial summary judgment. In its motion, MCCU seeks "a declaratory judgment, in recordable form, stating that Franklin's mortgage on the [Property] . . . is subordinate to MCCU's mortgage on said [P]roperty." (MCCU's Mot. at 1.) MCCU contends that there is no dispute that, although Plaintiff's mortgage was executed prior to MCCU's mortgage, at the time the mortgage was executed and given to MCCU, Plaintiff's mortgage was not

recorded. Moreover, MCCU asserts that there is no evidence in the record showing that it had any notice, actual or constructive, of Plaintiff's mortgage. Therefore, according to MCCU, its mortgage takes priority over Plaintiff's mortgage under Michigan's race-notice statute.

In response, Plaintiff does not dispute that MCCU's mortgage was recorded first and that MCCU did not have notice of its mortgage. Nevertheless, Plaintiff asserts that MCCU's own documentary evidence shows that it had actual knowledge of MFM's prior unrecorded mortgage. (*See* Pl.'s Resp. to MCCU's Mot., Ex. A (stating that MFM is "in first lien position").) Plaintiff argues that MCCU's actual knowledge of MFM's mortgage interest and the fact that Plaintiff has priority over MFM's mortgage prevents MCCU from being a good-faith purchaser under Michigan's race-notice statute. Therefore, according to Plaintiff the order of priority is as follows: (1) Plaintiff, (2) MFM, and (3) MCCU.

Having already determined that genuine issues of material fact exist as to whether Plaintiff's mortgage takes priority over MFM's mortgage, the Court is unable to resolve MCCU's motion at this time. If Plaintiff's mortgage takes priority over MFM's mortgage, MCCU's mortgage must be subordinate to Plaintiff's mortgage because there is no dispute that MCCU had notice of MFM's mortgage and thus would be subordinate to MFM's mortgage. If Plaintiff's mortgage takes priority over MFM's mortgage, the order of priority would be as follows: (1) Plaintiff; (2) MFM; and (3) MCCU. Nevertheless, because there is no dispute that MCCU had no notice of Plaintiff's mortgage, if the Court finds that MFM's mortgage takes priority over Plaintiff's mortgage, the order of priority would be as follows: (1) MFM; (2) MCCU; and (3) Plaintiff. The Court acknowledges that these orders of priority

11

seemingly ignore MCCU's lack of notice regarding Plaintiff's mortgage. Nevertheless, the Court believes that allowing MCCU to obtain priority over Plaintiff's mortgage, notwithstanding the clear documentary proof that MCCU had actual notice of MFM's mortgage, would contravene the purposes of Michigan's race-notice statute. Consequently, MCCU's motion will be denied pending the resolution of the priority dispute between Plaintiff and MFM.

## IV. Conclusion

In conclusion, because a genuine issue of material fact exists as to whether Plaintiff had constructive notice of MFM's mortgage, the Court cannot determine, at this time, whether Plaintiff's mortgage takes priority over MFM's mortgage. Likewise, because a genuine issue of material fact exists as to whether Plaintiff's mortgage will take priority over MFM's mortgage, the Court cannot determine the priority of MCCU's mortgage. Therefore, the only issue that must be resolved as to Count I of Plaintiff's complaint is whether Plaintiff had constructive notice of MFM's mortgage. Once this issue is determined, the Court will be able to determine the order of priority of Plaintiff's, MFM's, and MCCU's mortgages.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for partial summary judgment on Count I of its complaint as to MFM is **DENIED**;

**IT IS FURTHER ORDERED**, that Michigan Catholic Credit Union's motion for partial summary judgment on Count I of the Complaint is **DENIED**.

s/PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

Copies to:
Sheri B. Cataldo
Mark A. Chaban
Michelle M. Wezner
Chiara F. Mattieson
Michael E. Tindall